No. 23-1917

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP;
MARVIN NEAL; ROBYNNE CAMPBELL; and DE'ONTAY WINCHESTER,

*Plaintiffs-Appellants*,

v.

ALAN WILSON, in his official capacity as Attorney General of South Carolina,

*Defendant-Appellee*.

On appeal from the U.S. District Court for the District of South Carolina
(Civil Action No. 2:23-01121-DCN)

**BRIEF FOR APPELLANTS**

JAMES E. COX, JR.
  200 E. Broad Street, Suite 400
  Greenville, SC 29602
  (864) 242-8212
  jcox@wyche.com

GLYNNIS HAGINS
JOE SCHOTTENFELD
  NAACP
  4805 Mt. Hope Drive
  Baltimore, MD 21215
  (410) 580-5777
  ghagins@naacpnet.org
  jschottenfeld@naacpnet.org

AMY MARSHAK
JOSEPH W. MEAD
WILLIAM POWELL
  INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY & PROTECTION
  GEORGETOWN UNIVERSITY LAW
    CENTER
  600 New Jersey Avenue NW
  Washington, DC 20001
  (202) 661-6629
  amy.marshak@georgetown.edu
  jm3468@georgetown.edu
  william.powell@georgetown.edu

*Additional counsel for Plaintiffs-Appellants listed inside.*    *November 6, 2023*

BEN GIFFORD
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY & PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
PO Box 211178
Brooklyn, NY 11221
(202) 661-6728
bg720@georgetown.edu

*Counsel for Appellants*

## RULE 26.1 DISCLOSURE STATEMENT

The South Carolina State Conference is a subsidiary of the NAACP. The NAACP has no parent corporation and no publicly held corporation owns 10 percent or more of its stock.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................... 1

STATEMENT OF JURISDICTION.................................................. 3

STATEMENT OF THE ISSUES..................................................... 4

PERTINENT STATUTE ............................................................... 4

STATEMENT OF THE CASE........................................................ 5

    A.    The Access-to-Justice Crisis for Tenants in South Carolina ...............5

    B.    South Carolina NAACP's Proposed Housing Advocate Program ..........................................................................6

    C.    The Chilling Effect of South Carolina's Restrictions on the Unauthorized Practice of Law....................................10

    D.    Procedural History...............................................13

SUMMARY OF ARGUMENT ....................................................... 16

STANDARD OF REVIEW ........................................................... 19

ARGUMENT ............................................................................. 20

I.    The district court abused its discretion in denying Plaintiffs' request for a preliminary injunction as moot. .......................................... 20

    A.    Plaintiffs' motion for a preliminary injunction is not moot...............20

    B.    The district court erred in determining that *Pullman* abstention precludes a preliminary injunction.....................................22

II.    Plaintiffs are entitled to a preliminary injunction....................... 28

    A.    Plaintiffs are likely to succeed on the merits of their claim that applying South Carolina's restriction on the unauthorized practice of law to the Housing Advocate Program violates the First Amendment.....................................................29

i

B.     Plaintiffs are likely to suffer—and are already suffering—irreparable injury. ..................................................................46

C.     The balance of the equities and public interest favor Plaintiffs..........47

CONCLUSION ....................................................................... 49

STATEMENT REGARDING ORAL ARGUMENT ........................................... 49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ......................................40

*Am. Trial Laws. Ass'n, N.J. Branch v. N.J. Sup. Ct.*,
    409 U.S. 467 (1973) (per curiam).......................................................................21

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
    564 U.S. 721 (2011).............................................................................................36

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ....................................................................33

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ......................24

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
    140 S. Ct. 2335 (2020)................................................................................. 29, 35

*Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*,
    377 U.S. 1 (1964)......................................................................................... 41, 44

*Billups v. City of Charleston*, 961 F.3d 673 (4th Cir. 2020) ..................... 31, 32, 35

*Brown v. Board of Education*, 347 U.S. 483 (1954)..................................................23

*Brown v. Ent. Merchants Ass'n*, 564 U.S. 786 (2011)............................................38

*Capital Associated Industries, Inc. v. Stein*,
    922 F.3d 198 (4th Cir. 2019) ..................................................................... passim

*Catrone v. Mass. State Racing Comm'n*,
    535 F.2d 669 (1st Cir. 1976)................................................................. 24, 25, 27

*Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184 (4th Cir. 2013)....................48

*City of Boerne v. Flores*, 521 U.S. 507 (1997)........................................................35

*Cohen v. California*, 403 U.S. 15 (1971)..................................................................31

*Di Biase v. SPX Corp.*, 872 F.3d 224 (4th Cir. 2017) ............................................19

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir. 2023)........................19

*Doe v. Condon*, 532 S.E.2d 879 (S.C. 2000) ................................................... 11, 46

*Elrod v. Burns*, 427 U.S. 347 (1976) .............................................................. 26, 46

*England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964).................... 15, 21

*Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507 (4th Cir. 2002)...........................48

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006)...................................................................................33

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
    949 F.3d 116 (3d Cir. 2020) .................................................................33

*Harrison v. NAACP*, 360 U.S. 167 (1959)................................................ 23, 24, 26

*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010).............................. 29, 30, 31

*In re Primus*, 436 U.S. 412 (1978)....................................................................... 29, 45

*In re Unauthorized Prac. of L. Rules Proposed by S.C. Bar*,
    422 S.E.2d 123 (S.C. 1992) .................................................................... 11, 39

*Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) .......................................................35

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't.*,
    2 F.4th 330 (4th Cir. 2021) (en banc) .................................................46

*League of Women Voters of N.C. v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) .................................................................28

*Linder v. Ins. Claims Consultants, Inc.*,
    560 S.E.2d 612 (S.C. 2002) .................................................... 12, 36, 38

*Matter of Anonymous Applicant for Admission to S.C. Bar*,
    875 S.E.2d 618 (S.C. 2022) .................................................... 36, 45

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...........................................................36

*Meredith v. Talbot Cnty.*, 828 F.2d 228 (4th Cir. 1987)........................................21

*N.J.-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher
    Educ.*, 654 F.2d 868 (3d Cir. 1981) .................................................................25

*NAACP v. Button*, 371 U.S. 415 (1963).......................................................... passim

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) .................35

*Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*,
    354 F.3d 249 (4th Cir. 2003) .................................................................. 34, 46

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................48

*Police Dept. of Chi. v. Mosley*, 408 U.S. 92 (1972) ...............................29

*R.R. Comm'n of Tex. v. Pullman Co.*,
　312 U.S. 496 (1941)............................................................... 2, 13, 20

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .................................. 30, 35

*Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc.
　v. Nixon*, 428 F.3d 1139 (8th Cir. 2005)....................................... 25, 27

*Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015) .............................36

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .......................................40

*Roe v. DOD*, 947 F.3d 207 (4th Cir. 2020)....................................... 40, 48

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
　141 S. Ct. 63 (2020) (per curiam)................................................ 26, 46

*Romany v. Colegio de Abogados de Puerto Rico*,
　742 F.2d 32 (1st Cir. 1984)...........................................................24

*SAS Inst., Inc. v. World Programming Ltd.*,
　874 F.3d 370 (4th Cir. 2017) .........................................................20

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969)...................28

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) .............................. 31, 40

*State v. Buyers Serv. Co.*, 357 S.E.2d 15 (S.C. 1987) ...................... 12, 45

*State v. Romero*, No. 2011-UP-137, 2011 WL 11733624
　(S.C. Ct. App. Apr. 5, 2011)...........................................................12

*State v. Shatten*, No. 2019-000825, 2021 WL 5826749
　(S.C. Ct. App. Dec. 8, 2021)...........................................................12

*United Transp. Union v. State Bar of Mich.*,
　401 U.S. 576 (1971)................................................................. 41, 44

*Upsolve, Inc. v. James*, 604 F. Supp. 3d 97 (S.D.N.Y. 2022) ......... 30, 35

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ....................................... 19, 48

*Wise v. Circosta*, 978 F.3d 93 (4th Cir. 2020) (en banc).......................20

**Statutes**

S.C. Code Ann. § 27-37-20 ...................................................................6, 43

S.C. Code Ann. § 40-5-310 ................................................. 4, 11, 12, 27

**Other Authorities**

Bruce Rich et al., *South Carolina Legal Needs Assessment 2022* (2023), https://perma.cc/WU9J-KB54 ................................................................5

Christel Purvis, *Should I Stay or Should I Go? South Carolina's Nonlawyer Judges*, 73 S.C. L. Rev. 1145 (2022) ...........................................40

Wright & Miller, Fed. Prac. & Proc. § 4243 (3d ed.) ................................ 21, 25, 26

**Rules**

Del. Sup. Ct. R. 57.1 ...........................................................................39

Utah Sup. Ct. Standing Order No. 16 (effective Mar. 9, 2023) ...........................39

**Constitutional Provisions**

U.S. Const. amend. I. ..................................................................... 29, 44

# INTRODUCTION

The district court concluded that South Carolina's broad prohibition on the unauthorized practice of law, which makes it a felony to engage in certain speech on legal matters, is chilling Plaintiffs from speaking to tenants facing eviction about those tenants' rights. In response to Plaintiffs' motion for a preliminary injunction, the State made no effort to argue that applying its law to Plaintiffs' speech would comply with the First Amendment. But the district court nevertheless abstained from deciding Plaintiffs' constitutional claims and denied their motion for a preliminary injunction as moot, based on the possibility that the Supreme Court of South Carolina would authorize Plaintiffs' speech and association under state law. In the meantime, the State's unconstitutional restriction on Plaintiffs' rights remains in place, perpetuating a First Amendment injury that demands an immediate remedy.

Plaintiffs' speech apprising tenants of their rights is desperately needed to address a serious housing crisis in South Carolina. The State has both one of the highest eviction rates in the country and a critical shortage of attorneys who are able and willing to represent low-income tenants facing eviction. As a result, more than 99 percent of tenants facing eviction in South Carolina do so alone. Without legal help, the vast majority—even those with meritorious defenses—default on their cases and lose their homes. To mitigate this crisis, the South Carolina State

Conference of the NAACP ("South Carolina NAACP") has developed a Housing Advocate Program that would train nonlawyer volunteers to give free, limited, and accurate legal advice to tenants facing eviction. Experts in housing law and legal ethics agree that the Program would help tenants keep their homes without harming consumer safety.

Plaintiffs—the South Carolina NAACP and three of its members—would like to implement the Program as soon as possible. But they are chilled from doing so by South Carolina's sweeping prohibition on the unauthorized practice of law, which likely bans even the limited and helpful guidance Plaintiffs seek to provide. If Plaintiffs were prosecuted for the unauthorized practice of law in South Carolina, they would face felony convictions and up to five years in prison.

Because of tenants' urgent need for legal advice, Plaintiffs have sought an injunction against the application of South Carolina's unauthorized-practice-of-law regime to the Housing Advocate Program on the ground that banning the Program violates the First Amendment. The district court denied Defendant's motion to dismiss Plaintiffs' suit, concluding that Plaintiffs have standing based on the chilling effect of the South Carolina law. But the court abstained from deciding the federal constitutional issues under the Supreme Court's decision in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and indicated that Plaintiffs should instead ask the Supreme Court of South Carolina to declare that

2

the Program does not constitute the unauthorized practice of law. The district court stayed the case and denied Plaintiffs' motion for a preliminary injunction as moot. Following the district court's instructions, Plaintiffs have filed a petition in the original jurisdiction of the South Carolina Supreme Court.

In this appeal, Plaintiffs do not challenge the district court's abstention ruling. Plaintiffs seek reversal only of the district court's denial of their preliminary injunction motion. Precedent establishes that *Pullman* abstention does not moot a plaintiff's request for a preliminary injunction. To the contrary, interim relief may be necessary to prevent an abstention order from exacerbating an ongoing violation of a plaintiff's constitutional rights. That is especially the case here, where the State has failed to meaningfully contest that Plaintiffs are entitled to a preliminary injunction on the merits of their claim, and the equities strongly favor Plaintiffs' requested injunction. The district court's denial of Plaintiffs' preliminary injunction motion should be reversed.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's original jurisdiction under 28 U.S.C. §§ 1331 and 1343. JA 15 (Compl. ¶ 17). On August 14, 2023, the district court granted Defendant's motion to stay the case and denied Plaintiffs' motion for a preliminary injunction as moot. JA 240 (Dkt. 64 at 20). Plaintiffs filed a timely notice of appeal on August 28, 2023. JA 241 (Dkt. 65 at 1); Fed. R. App. P. 4(a).

3

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292 because the district court's order "refus[ed]" an injunction.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in determining that Plaintiffs' motion for a preliminary injunction is moot.

2.    Whether Plaintiffs are entitled to a preliminary injunction barring South Carolina from enforcing its unauthorized practice of law restrictions against their free Program providing limited legal guidance to tenants facing eviction.

## PERTINENT STATUTE

Section 40-5-310 of the South Carolina Code provides:

> No person may either practice law or solicit the legal cause of another person or entity in this State unless he is enrolled as a member of the South Carolina Bar pursuant to applicable court rules, or otherwise authorized to perform prescribed legal activities by action of the Supreme Court of South Carolina. The type of conduct that is the subject of any charge filed pursuant to this section must have been defined as the unauthorized practice of law by the Supreme Court of South Carolina prior to any charge being filed. A person who violates this section is guilty of a felony and, upon conviction, must be fined not more than five thousand dollars or imprisoned not more than five years, or both.

S.C. Code Ann. § 40-5-310.

4

## STATEMENT OF THE CASE

### A.    The Access-to-Justice Crisis for Tenants in South Carolina

South Carolina has one of the highest eviction rates in the country. JA 79 (Chambliss Decl. ¶ 14); JA 15–16 (Compl. ¶ 20).[1] In some South Carolina counties, more than ten percent of tenants are evicted each year. JA 15–16 (Compl. ¶ 20). The pandemic produced a "wave of evictions" that aggravated the State's housing crisis. Bruce Rich et al., *South Carolina Legal Needs Assessment 2022*, at 25 (2023), https://perma.cc/WU9J-KB54. The problem shows no sign of abating, in light of "a longer-term shift in the market, with rents rising and investors buying up properties." *Id.* at 26; JA 79 (Chambliss Decl. ¶ 14).

Nearly every tenant facing eviction in South Carolina does so without the help of an attorney. In 2019, more than 99 percent of tenants went unrepresented in eviction cases. JA 78 (Chambliss Decl. ¶ 11). In South Carolina, there are simply "too many people in need of legal services and not nearly enough services to go around." JA 78 (Chambliss Decl. ¶ 10). The State ranks last in the nation in the number of civil legal aid attorneys available to serve low-income people, on a per capita basis. JA 78 (Chambliss Decl. ¶ 12). In 2021, for instance, the State's leading legal services agencies, including South Carolina Legal Services, had

---

[1] The following facts are derived from Plaintiffs' motion for a preliminary injunction and the supporting evidence and exhibits, as well as Plaintiffs' complaint.  Citations to the Joint Appendix appear as "JA __."

fewer than 70 full-time lawyers to handle nearly 19,000 requests for legal help. JA 78 (Chambliss Decl. ¶ 12). The lack of legal-aid resources disproportionately affects Black residents, who are more likely than others to have unstable housing and to face barriers to accessing legal assistance. JA 78–79 (Chambliss Decl. ¶ 13).

Tenants' lack of access to legal services has devastating consequences. South Carolina's fast-moving eviction process gives tenants just 10 days after receiving an eviction notice to request a hearing to "show cause" why they should not be ejected from their homes. S.C. Code Ann. § 27-37-20. The process is daunting, and most tenants have nowhere to turn for advice on how to assert their rights. As a result, the vast majority of tenants default without ever appearing in court, regardless of whether they have meritorious defenses to eviction. Rich, *supra*, at 25–26; JA 97 (Fessler Decl. ¶ 5); JA 79 (Chambliss Decl. ¶ 15).

### B.    South Carolina NAACP's Proposed Housing Advocate Program

Founded in 1939, the South Carolina Conference of the NAACP is the State's oldest civil rights group. JA 68 (Murphy Decl. ¶ 2). The organization "seeks to remove all barriers of racial discrimination, including by ensuring Black South Carolinians have access to safe and stable housing." JA 68 (Murphy Decl. ¶ 2). Over the past several years, the South Carolina NAACP has responded to the State's eviction crisis with housing initiatives aimed at connecting tenants facing eviction with resources. JA 69–70 (Murphy Decl. ¶¶ 5–9). Those programs have

primarily focused on helping tenants submit applications for rental assistance and other housing-related resources. JA 69–70 (Murphy Decl. ¶¶ 5–9). Although volunteers in those programs have referred tenants to South Carolina Legal Services, they stopped short of directly providing any arguable legal advice, not even alerting tenants of their right to request a hearing. JA 69–70 (Murphy Decl. ¶ 7); JA 75 (Winchester Decl. ¶ 11).

Now, the South Carolina NAACP wants to do more. It has developed a Housing Advocate Program that would train volunteers to provide free, limited, and accurate legal guidance to tenants facing eviction. *See* JA 35–64 (Housing Advocate Eviction Advice Training Manual). Though not lawyers, the volunteers would be well versed in South Carolina's eviction process, and the training would equip them to provide essential information to help tenants assert their rights.

Specifically, the Program would train Housing Advocates to give tenants facing eviction three pieces of limited but crucial guidance. First, the Advocate would tell the tenant *how* to request a hearing. JA 45 (Training at 10). That step requires little more than walking the tenant through the instructions on a court-issued form called a "Rule to Vacate or Show Cause." JA 45 (Training at 10). Second, the Advocate would tell the tenant *when* to request a hearing. JA 46 (Training at 11). That step ensures the tenant does not miss the 10-day deadline for requesting a hearing. JA 46 (Training at 11). Third, the Advocate would alert the

7

tenant to certain common defenses that might be available in the tenant's case at the hearing. JA 46–51 (Training at 11–16). That final step is also carefully limited in scope. The Advocate would focus on straightforward defenses, primarily pertaining to whether the landlord provided timely notice of lease termination before filing for eviction. JA 46–51 (Training at 11–16).

Those three pieces of advice are designed to work in tandem to maximize the impact of the Housing Advocate Program. The advice is tailored to help tenants avoid defaulting on their eviction proceedings by letting them know to request a hearing, how and when to do so, and what to say at the hearing to defend themselves. Merely by exercising their right to request a hearing within the 10-day window, tenants avoid immediate default and buy additional time to seek legal representation, work out arrangements with their landlords to catch up on rent, or obtain alternative housing.

At the same time, the Program is limited to straightforward eviction-related issues that a nonlawyer can handle. Housing and legal-ethics experts have carefully vetted the Program. Mark Fessler, a Deputy Director at South Carolina Legal Services and one of South Carolina's leading eviction-defense lawyers, reviewed the training guide, provided feedback that the South Carolina NAACP incorporated, and attested to the training's accuracy, usefulness, and complementarity with existing legal services. JA 97–99 (Fessler Decl. ¶¶ 7–13).

8

In addition to restricting the scope of the advice to be provided, the Program also includes several other internal safeguards to protect tenants. The Program is free to tenants, and Housing Advocates cannot accept any form of payment for their services. JA 36 (Training at 1). Advocates must disclose that they are not lawyers and that they can provide only the limited advice specified in the training, and they must obtain the tenant's informed consent. JA 36–37 (Training at 1–2). They must also check to ensure that no conflicts of interest would prevent them from helping a particular tenant. JA 37 (Training at 2). And Advocates must protect the confidentiality of any information tenants share. JA 37 (Training at 2). Advocates will share a list of legal services providers with the tenants they help and offer to connect tenants with those providers, if available. JA 36–37, JA 51 (Training at 1–2, 16). The training further specifies several circumstances in which an Advocate must stop giving advice and refer the tenant directly to a lawyer, which ensures that Advocates do not venture beyond the limits of their training. JA 38, JA 42, JA 44, JA 46–47, JA 50 (Training at 3 n.1, 7, 9, 11–12, 15). Finally, the South Carolina NAACP intends to follow up with tenants to ensure the advice they received from Housing Advocates was helpful and consistent with the training. JA 45 (Training at 10).

Professor Elizabeth Chambliss, director of the Center on Professionalism at the University of South Carolina Law School, has carefully reviewed the Program

and concluded that, "in light of the many guardrails the program establishes to protect the public, the South Carolina NAACP's effort to share limited legal advice with tenants facing eviction would provide benefits to tenants without implicating the sort of concerns that justify restrictions on the practice of law by nonlawyers." JA 94 (Chambliss Decl. ¶ 62).

> ### C.     The Chilling Effect of South Carolina's Restrictions on the Unauthorized Practice of Law

The South Carolina NAACP stands ready to implement the Program to help address the State's eviction crisis. JA 72 (Murphy Decl. ¶ 17). The organization has already identified volunteers who are eager to serve as Housing Advocates, including the individual Plaintiffs in this case, Marvin Neal, Robynne Campbell, and De'Ontay Winchester. All three of them have participated in the South Carolina NAACP's previous tenant-assistance efforts and have provided nonlegal advice to tenants on how to access services. JA 100–102 (Neal Decl. ¶¶ 1, 7–10); JA 104–105 (Campbell Decl. ¶¶ 1, 4–5); JA 73–74 (Winchester Decl. ¶¶ 1, 5–7). They have seen first-hand that tenants desperately need access to basic advice about their rights. JA 102 (Neal Decl. ¶¶ 11–14); JA 106–107 (Campbell Decl. ¶¶ 12–16); JA 74–75 (Winchester Decl. ¶¶ 8–12). And they are prepared to take the South Carolina NAACP's training as soon as it is available, so they can give tenants the guidance needed to help avoid eviction. JA 103 (Neal Decl. ¶¶ 18); JA 106–107 (Campbell Decl. ¶ 17); JA 75 (Winchester Decl. ¶¶ 13–14). For instance,

Plaintiff Marvin Neal has stated that the training would be "an enormous advantage" in his work with tenants facing eviction in his community, and he would like to take it "as soon as possible." JA 103 (Neal Decl. ¶ 18).

The only thing preventing Plaintiffs from implementing and participating in the Program is their fear of prosecution under South Carolina's restrictions on the unauthorized practice of law. JA 102 (Neal Decl. ¶ 15); (Campbell Decl. ¶ 12); JA 75 (Winchester Decl. ¶ 10); JA 71 (Murphy Decl. ¶ 12). By statute, South Carolina prohibits anyone from practicing law "unless he is enrolled as a member of the South Carolina Bar" or "otherwise authorized to perform prescribed legal activities by action of the Supreme Court of South Carolina." S.C. Code Ann. § 40-5-310. The statute leaves it to the state Supreme Court to "define[]" what qualifies as the unauthorized practice of law. *Id.* The South Carolina Supreme Court, in turn, has decided that it would be "neither practicable nor wise to attempt a comprehensive definition," choosing to determine the contours of the unauthorized practice of law in the context of "actual case[s] or controvers[ies]," *In re Unauthorized Prac. of L. Rules Proposed by S.C. Bar*, 422 S.E.2d 123, 124 (S.C. 1992).

Through its decisions, the South Carolina Supreme Court has adopted a broad interpretation of the unauthorized practice of law. It has held that a paralegal cannot conduct informational seminars on wills and trusts, *Doe v. Condon*, 532 S.E.2d 879, 882 (S.C. 2000); that a public insurance adjuster cannot advise clients

11

about their rights under an insurance policy, even when the adjuster merely points out relevant policy language, *Linder v. Ins. Claims Consultants, Inc.*, 560 S.E.2d 612, 622 (S.C. 2002); and that a nonlawyer cannot conduct a real-estate closing, even when offering just a few words explaining a document, *State v. Buyers Serv. Co.*, 357 S.E.2d 15, 19 (S.C. 1987). The South Carolina Supreme Court has thus identified the type of conduct in which Plaintiffs want to engage as the unauthorized practice of law, and Plaintiffs reasonably fear prosecution under S.C. Code Ann. § 40-5-310 if they move forward with the Program. In the proceedings below in this case, counsel for the State declined to disavow prosecuting Plaintiffs if they implement the Housing Advocate Program. JA 204–205 (Trans. at 22–23).

Plaintiffs are especially reluctant to risk prosecution under South Carolina's unauthorized-practice-of-law regime because of its harsh penalties. Unlike most other states, where unauthorized practice of law is a civil infraction or minor misdemeanor, South Carolina makes it a felony punishable by up to five years in prison. S.C. Code Ann. § 40-5-310; *see also* JA 86–87 (Chambliss Decl. ¶ 37) (collecting and comparing state statutes). The State actively enforces the prohibition on unauthorized practice of law through criminal prosecutions. *See, e.g.*, *State v. Shatten*, No. 2019-000825, 2021 WL 5826749, at *1 (S.C. Ct. App. Dec. 8, 2021); *State v. Romero*, No. 2011-UP-137, 2011 WL 11733624, at *1 (S.C. Ct. App. Apr. 5, 2011).

12

### D.     Procedural History

Plaintiffs filed this action against Attorney General Alan Wilson, arguing that applying South Carolina's unauthorized-practice-of-law regime to their proposed Housing Advocate Program violates the First and Fourteenth Amendments. JA 33 (Compl. Request for Relief). Plaintiffs sought a declaration that the advice provided to tenants facing eviction under the Program is constitutionally protected and an injunction barring the Attorney General from enforcing S.C. Code Ann. § 40-5-310 against them for providing that advice. JA 33 (Compl. Request for Relief). Plaintiffs also moved for a preliminary injunction, so they could immediately begin implementing the Housing Advocate Program in order to address South Carolina's urgent eviction crisis. JA 65 (Dkt. 4).

Defendant moved to dismiss the complaint on the grounds that Plaintiffs lacked standing and that the controversy was unripe for judicial resolution; Defendant opposed Plaintiffs' preliminary-injunction motion for the same reasons. JA 108 (Dkt. 35). In the alternative, Defendant asked the district court to abstain from deciding Plaintiffs' constitutional claims and to stay the case, pursuant to the Supreme Court's decision in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). Defendant argued that the South Carolina Supreme Court might choose to authorize the Program and that Plaintiffs' proper course of action was to

13

"go to the [South Carolina Supreme Court], see whether the court approves it, and then come back" to federal court. JA 212–213 (Trans. at 30–31).

In a consolidated opinion, the district court ruled on Plaintiffs' motion for a preliminary injunction and Defendant's motion to dismiss or stay. The court began by denying Defendant's motion to dismiss, concluding that Plaintiffs have standing and that the dispute is ripe. In particular, the district court agreed that South Carolina's prohibition on the unauthorized practice of law is currently chilling Plaintiffs' speech and that, because of South Carolina's history of broad enforcement and Defendant's unwillingness to disclaim prosecution in this case, Plaintiffs' fear of prosecution is reasonable. JA 226–227, JA 231 (Dkt. 64 at 6–7, 11). The court also rejected Defendant's argument that Plaintiffs lack standing without first seeking authorization from the South Carolina Supreme Court, reasoning that Plaintiffs' injury "arises from the very fact of a licensure requirement which presently silences" Plaintiffs. JA 229–230 (Dkt. 64 at 9–10).

Turning to the matter of abstention, the court abstained under *Pullman* and granted Defendant's motion to stay. JA 233–239 (Dkt. 64 at 13–19). Although the court agreed that Plaintiffs "face a credible threat of prosecution" based on prior South Carolina Supreme Court decisions, JA 229 (Dkt. 64 at 9), it held that those rulings "did not deal with near-identical facts," JA 235 (Dkt. 64 at 15). The court further reasoned that "even if plaintiffs are correct that their conduct would

14

constitute [the unauthorized practice of law] under existing law," the South

Carolina Supreme Court might exercise its discretion to "otherwise authorize" the

Program anyway. JA 235–236 (Dkt. 64 at 15–16).

Finally, the court denied Plaintiffs' motion for a preliminary injunction as

moot in light of its order staying the case. JA 239–240 (Dkt. 64 at 19–20). In doing

so, it did not engage in any analysis of the factors for granting a preliminary

injunction or explain its mootness decision, instead saying only that it was guided

by "principles of comity" and concerns for the "independence of state

governments." JA 240 (Dkt. 64 at 20). The court then urged Plaintiffs to file an

action in the South Carolina Supreme Court to seek authorization for the Housing

Advocate Program "in the interest of assisting the people of South Carolina." JA

240 (Dkt. 64 at 20).

In accordance with the district court's order, Plaintiffs filed a petition in the

original jurisdiction of the Supreme Court of South Carolina, asking it to authorize

the Housing Advocate Program under state law while reserving their right to return

to federal court for resolution of their federal constitutional claims. *See England v.

La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 421-422 (1964) (establishing this

procedure for reserving federal claims in *Pullman* abstention cases). On a parallel

track, Plaintiffs timely filed this appeal seeking reversal of the district court's

denial of their motion for a preliminary injunction. JA 241 (Notice of Appeal).

15

## SUMMARY OF ARGUMENT

Plaintiffs are entitled to a preliminary injunction, and the district court erred in holding that Plaintiffs' motion for a preliminary injunction was moot. The chilling effect of South Carolina's prohibition of the unauthorized practice of law is ongoing, and Plaintiffs' need for an injunction remains live. The district court's decision to abstain under *Pullman* does not negate that ongoing harm. Plaintiffs have also satisfied all four preliminary-injunction factors. In the district court, the State made no effort whatsoever to carry its burden of showing that its unauthorized-practice-of-law regime passes constitutional muster. That failure warrants reversal of the district court's denial of the preliminary injunction.

I.     The Supreme Court, as well as several federal courts of appeals, has recognized that *Pullman* abstention does not moot a plaintiff's motion for a preliminary injunction. *Pullman* abstention applies when a state court's resolution of an unclear issue of state law could, at some point in the future, render moot a related question of federal constitutional law. But in that situation, a plaintiff's federal claim becomes moot only if the state court issues a favorable decision under state law that eliminates the need to decide the federal question. Until that happens, the plaintiff's federal claim remains live. That is why courts abstaining under *Pullman* stay the federal action, rather than dismissing it.

16

Although notions of comity underlie the *Pullman* abstention doctrine, a court considering whether to issue a preliminary injunction must weigh not only the state court's prerogative to decide questions of state law, but also the plaintiffs' interest in vindicating their constitutional rights. Here, the chilling effect of South Carolina's unauthorized-practice-of-law regime is preventing Plaintiffs from exercising their First Amendment rights to speak and associate, and those constitutional injuries call out for immediate redress. If anything, Plaintiffs' need for interim relief has become more urgent now that the district court has decided to hold off on resolving their constitutional claims.

**II.**     Plaintiffs have satisfied all four prongs of the preliminary-injunction test, and the Court should direct the district court to enter a preliminary injunction barring the State from enforcing its prohibition on the unauthorized practice of law against the Housing Advocate Program.

With respect to the merits, the burdens at the preliminary-injunction stage track the burdens at trial. Because Defendant would ultimately bear the burden of justifying the State's restriction on Plaintiffs' freedoms of speech and association, he also bears the burden of showing that the challenged law is constitutional at the preliminary-injunction stage. But Defendant made no effort in the district court to defend the State's prohibition on the merits. His brief in response to the motion for a preliminary injunction failed to address the merits at all, much less provide

17

evidence to support the challenged application of the law. That alone is enough for Plaintiffs to prevail on the likelihood of success on the merits prong.

Even setting aside Defendant's failure to meet his burden, Plaintiffs are likely to succeed on their claims. As applied to Plaintiffs' free, limited, and accurate legal advice, the State's unauthorized-practice-of-law regime is a content-based restriction on speech that is subject to strict scrutiny. The regime cannot meet that demanding standard. The State has no compelling interest in banning the Housing Advocate Program, in light of its many safeguards designed to protect consumer welfare. And the restriction is not narrowly tailored because it is both overinclusive and underinclusive. South Carolina's unauthorized-practice-of-law regime also violates Plaintiffs' freedom to associate for the purpose of promoting access to courts, a right that the Supreme Court has described as fundamental. Once again, application of the law to Plaintiffs' Program fails exacting scrutiny.

Plaintiffs have also satisfied the other preliminary injunction factors. This Court has held that the denial of First Amendment freedoms necessarily constitutes an irreparable injury. Upholding constitutional rights is also in the public interest, and the State has no legitimate interest in enforcing an unconstitutional restriction on speech and association. That is particularly the case here because Plaintiffs want to implement the Housing Advocate Program to serve the public interest by helping low-income tenants understand and enforce their legal rights. Without the

18

Program, those tenants have nowhere else to turn for legal help, given the State's severe shortage of legal aid attorneys. The Court should therefore direct the district court to enter a preliminary injunction.

## STANDARD OF REVIEW

This Court "reviews a district court's denial of a motion for preliminary injunction for abuse of discretion." *Di Biase v. SPX Corp.*, 872 F.3d 224, 229 (4th Cir. 2017). As part of that analysis, the Court "examin[es] all factual findings for clear error and legal conclusions de novo." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 138 (4th Cir. 2023). "When a motion for preliminary injunction is denied as moot," however, there are "no factual or legal findings for this court to review." *Di Biase*, 872 F.3d at 229–230. In those circumstances, the Court "must determine whether the [district] court abused its discretion by failing to exercise it." *Id.* at 230.

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Id.* To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

19

## ARGUMENT

**I.    The district court abused its discretion in denying Plaintiffs' request for a preliminary injunction as moot.**

### A.    Plaintiffs' motion for a preliminary injunction is not moot.

*Pullman* abstention does not moot a claim for interim relief. A claim for injunctive relief becomes moot if "there is no effective relief available in federal court that the plaintiff has not already received." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017) (internal brackets omitted). Although the district court did not apply the usual test for mootness, it appeared to determine that its decision to abstain under *Pullman* rendered moot Plaintiffs' request for a preliminary injunction. But unless and until the South Carolina Supreme Court authorizes Plaintiffs' Program, Plaintiffs' First Amendment injury is ongoing, and a preliminary injunction would provide effective relief for that injury.

*Pullman* abstention delays a court's final resolution of federal claims, but it does not moot those claims. *Pullman* abstention applies when a state court's resolution of an unclear state law issue "*may* moot or present in a different posture the federal constitutional issue such that the state law issue is *potentially* dispositive." *Wise v. Circosta*, 978 F.3d 93, 101 (4th Cir. 2020) (en banc) (emphasis added); *see also R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). The doctrine applies when the future resolution of an uncertain state-law

issue in state court *could* moot a federal question. But a district court's decision to abstain from deciding that federal question under *Pullman* does not moot the federal case, absent a favorable decision in state court. As the Supreme Court has explained, *Pullman* abstention "does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise." *England*, 375 U.S. at 416. That is why, if a court abstains under *Pullman*, the court stays the case (as the district court did here), rather than dismissing it. *See Am. Trial Laws. Ass'n, N.J. Branch v. N.J. Sup. Ct.*, 409 U.S. 467, 469 (1973) (per curiam); *Meredith v. Talbot Cnty.*, 828 F.2d 228, 232 (4th Cir. 1987); Wright & Miller, Fed. Prac. & Proc. § 4243 (3d ed.).

In accordance with the district court's abstention decision, Plaintiffs have filed a petition asking the South Carolina Supreme Court to authorize their Program as a matter of state law. But unless and until the state Supreme Court grants relief, Plaintiffs' injury under the Federal Constitution persists. They still want to implement their Program to provide essential advice to tenants facing eviction and support tenants' access to the courts, and they remain chilled from doing so by South Carolina's sweeping unauthorized-practice-of-law regime. A preliminary injunction permitting Plaintiffs to implement their Program during the pendency of litigation would provide effective relief for that First Amendment harm. In short, although the case is stayed, the dispute is live.

There is thus nothing moot about Plaintiffs' request for a preliminary injunction. If anything, the need for a preliminary injunction has become greater now that the district court's consideration of the merits is on hold. The South Carolina Supreme Court has provided no specific timeline for its consideration of Plaintiffs' original action, so it is unclear when that court might rule. If Plaintiffs were to lose on their state-law argument in state court, they would then need to return to federal court to start over litigating their federal claims, which would take more time. It could thus be years before Plaintiffs receive a final decision on their First Amendment claims in federal court. And in the meantime, they will continue suffering an irreparable injury to their constitutional rights.

**B.      The district court erred in determining that *Pullman* abstention precludes a preliminary injunction.**

In holding that the preliminary-injunction motion was moot, the district court ignored the ongoing violation of Plaintiffs' constitutional rights based on a concern about "principles of comity" and "the rightful independence of state governments." JA 240 (Dkt. 64 at 20) (internal citation omitted). The district court failed to explain how those prudential considerations were relevant to mootness. In any event, the district court's concerns were misplaced. Although deference to state courts' authority to interpret state law underlies the *Pullman* abstention doctrine, the Supreme Court and several other circuits have recognized that nothing prevents an abstaining court from issuing interim relief during the

22

pendency of state court proceedings. To the contrary, a preliminary injunction is necessary to prevent the delay imposed by abstention from exacerbating the constitutional harm Plaintiffs are currently suffering.

The Supreme Court concluded that interim relief was available following *Pullman* abstention in *Harrison v. NAACP*, 360 U.S. 167 (1959). That case bore substantial resemblance to this one. It involved a challenge by the NAACP to Virginia state laws placing various restrictions on the organization's advocacy work, including its ability to provide legal advice, particularly in the area of integration. As in this case, the NAACP claimed that the challenged state laws "invaded rights of free speech" and "burdened the right of access to the courts." *Id.* at 174–175. The district court largely agreed, finding that three of the laws were enacted to "nullify" the Supreme Court's decision in *Brown v. Board of Education*, 347 U.S. 483 (1954), and permanently enjoining their enforcement on the ground that they violated the Fourteenth Amendment. *Harrison*, 360 U.S. at 170–76. The Supreme Court reversed, directing the district court to abstain from deciding the constitutional challenge until the Virginia courts had an opportunity to construe the statutes. *Id.* at 176. At the same time, the Court credited the district court's finding that "the existence and threatened enforcement of these statutes worked great and immediate irreparable injury." *Id.* at 178. As in this case, that irreparable injury arose from infringement of rights to expression and association. In light of that

23

harm, the Court emphasized that "the District Court of course possesses ample

authority in this action, or in such supplemental proceedings as may be initiated, to

protect the appellees while this case goes forward."[2] *Id.* at 179; *see also Babbitt v.*

*United Farm Workers Nat'l Union*, 442 U.S. 289, 312 n.18 (1979) (recognizing

that authority).

Following the Supreme Court's guidance, multiple federal circuit courts

have directed entry of preliminary injunctions while cases were stayed for purposes

of *Pullman* abstention. The First Circuit has granted preliminary injunctions to

protect plaintiffs' rights during a period of abstention on at least two occasions. *See*

*Catrone v. Mass. State Racing Comm'n*, 535 F.2d 669, 672 (1st Cir. 1976)

(granting preliminary injunction "during the period that the district court, retaining

jurisdiction, awaits the state outcome" following *Pullman* abstention, where

plaintiff alleged violations of due process and equal protection rights); *Romany v.*

*Colegio de Abogados de Puerto Rico*, 742 F.2d 32, 44–45 (1st Cir. 1984) (granting

preliminary injunction despite *Pullman* abstention in First Amendment challenge).

The court explained that interim relief is consistent with abstention and that

---

[2] In *Harrison*, a preliminary injunction was not immediately necessary because Virginia authorities had agreed "to cooperate . . . in withholding action under the authority of the statutes until a final decision is reached." 360 U.S. at 178-179. Here, by contrast, the State refused to forswear prosecuting Plaintiffs if they were to implement the Housing Advocate Program during the pendency of litigation. JA 204–205 (Trans. at 22–23).

24

"considerations of equity and fairness . . . strongly suggest the propriety of granting preliminary injunctive relief during the period that the district court, retaining jurisdiction, awaits the state outcome." *Catrone*, 535 F.2d at 672.

The Eighth Circuit has similarly approved entry of a preliminary injunction pending the outcome of state proceedings in a *Pullman* abstention case. *See Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005). The court cited *Harrison* for the proposition that "an abstaining federal court *may* grant a preliminary injunction while state courts construe the challenged statute." *Id.*; *see also N.J.-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Educ.*, 654 F.2d 868, 885 (3d Cir. 1981) (explaining that issuance of a preliminary injunction is consistent with *Pullman* abstention, because such interim relief "places no limitation" on a state court's ability to construe the state law). In all of those cases, courts concluded that deference to state courts required abstention but did not preclude interim relief.

In light of that precedent, a leading treatise explains that a district court abstaining under *Pullman* "may give whatever interim relief is appropriate to protect the party during the period of abstention." Wright & Miller, Fed. Prac. & Proc. § 4243 (3d ed.). Such relief is necessary when "the federal plaintiff will be seriously harmed if the state law is enforced while the state questions are being

25

tested in the state court." *Id.*

That is the situation here. As explained more fully below, South Carolina's broad prohibition on the unauthorized practice of law is chilling Plaintiffs from implementing the Housing Advocate Program, in violation of their First Amendment rights to speak and associate. Those are exactly the types of constitutional harms that the Supreme Court said in *Harrison* can warrant issuance of interim relief, despite *Pullman* abstention, in order to prevent "great and immediate irreparable injury." 360 U.S. at 178. Because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)), Plaintiffs' ongoing First Amendment injuries require immediate redress.

The district court was concerned that issuing a preliminary injunction would "risk mandating action in a way that would prematurely step into the exclusive province of the State Supreme Court." JA 240 (Dkt. 64 at 20). Admittedly, a court might find it difficult to assess a plaintiff's likelihood of success on the merits when the court has abstained from addressing the merits until a state court construes the challenged statute. But an abstaining court must consider not only the need to defer to state courts on matters of state law, but also the importance of

protecting a plaintiff's rights under the Federal Constitution during the pendency of
potentially protracted litigation. In light of those conflicting imperatives, courts
have held that a plaintiff's "showing of a substantial likelihood of success on his
federal claim, taking into account the uncertainty created by the issue prompting
abstention, support[s] the grant of federal preliminary relief where the other
equities strongly favor[] it." *Nixon*, 428 F.3d at 1144; *see also Catrone*, 535 F.2d at
672 (holding that a court can issue a preliminary injunction despite *Pullman*
abstention where "the constitutionality of [the government's] asserted power" is
"doubtful enough" and the "other equities so strongly favor it"). Here, Plaintiffs
are suffering an ongoing First Amendment injury, and equity demands an
immediate remedy for that irreparable harm.

Interim relief is especially appropriate here because the district court
deferred to a state-court procedure that might itself raise constitutional concerns.
The district court interpreted state law as permitting the South Carolina Supreme
Court to "otherwise authorize" speech that it first determines constitutes the
unauthorized practice of law. S.C. Code Ann. § 40-5-310. To the extent the district
court relied on that portion of the statute in its decision, the court may have
endorsed a procedure akin to a prior restraint on speech. And the United States
Supreme Court has warned against "law[s] subjecting the exercise of First
Amendment freedoms to . . . prior restraint . . . without narrow, objective, and

27

definite standards." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–151 (1969). This Court should not defer indefinitely to that questionable state-court process to protect Plaintiffs' rights.

The district court thus erred in holding that Plaintiffs' motion for a preliminary injunction was moot. Based on its incorrect mootness determination, the district court declined to engage in any analysis of the preliminary-injunction factors. JA 239 (Dkt. 64 at 19). At a minimum, this Court should reverse the district court's erroneous mootness holding and remand for consideration of Plaintiffs' motion for a preliminary injunction on the merits.

## II.    Plaintiffs are entitled to a preliminary injunction.

The Court should not stop there. "Appellate courts have the power to vacate and remand a denial of a preliminary injunction with specific instructions for the district court to enter an injunction." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 248 (4th Cir. 2014). Plaintiffs have provided sufficient evidence to meet all four prongs of the preliminary-injunction test.[3]  The Court therefore can and should order the district court to enter the requested interim relief.

---

[3] The district court indicated that Plaintiffs' motion for a preliminary injunction was subject to an "even more exacting" standard because the motion requests a "mandatory" injunction. JA 239–240 (Dkt. 64 at 19–20). To the extent that higher standard applies, Plaintiffs' showing on the preliminary-injunction factors is sufficient to meet it.

**A.** **Plaintiffs are likely to succeed on the merits of their claim that applying South Carolina's restriction on the unauthorized practice of law to the Housing Advocate Program violates the First Amendment.**

    **1.** **As applied, South Carolina's unauthorized-practice-of-law regime operates as an unconstitutional content-based speech restriction.**

        *i.* *South Carolina's unauthorized-practice-of-law regime restricts Plaintiffs' speech based on its content.*

Plaintiffs are likely to succeed on their claim that South Carolina's unauthorized-practice-of-law regime, as applied to the Housing Advocate Program, violates the freedom of speech. The First Amendment, which applies to the states through the Fourteenth Amendment, prohibits South Carolina from "abridging the freedom of speech." U.S. Const. amend. I. "Above 'all else, the First Amendment means that government' generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (plurality opinion) (quoting *Police Dept. of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)). As applied to Plaintiffs' efforts to inform tenants facing eviction about their legal rights, South Carolina's prohibition on the unauthorized practice of law is a content-based restriction on speech that violates the First Amendment.

It is well established that legal advice is speech. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 27 (2010); *In re Primus*, 436 U.S. 412, 438 n.32 (1978).

"[A]dvice derived from 'specialized knowledge,'" including legal advice, is speech entitled to full constitutional protection. *Humanitarian Law*, 561 U.S. at 27. The free, limited, and accurate advice Plaintiffs seek to give tenants facing eviction is thus protected speech.

A speech restriction is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). South Carolina's unauthorized-practice-of-law regime applies to Plaintiffs' speech based on the topic discussed. Plaintiffs are free to advise tenants facing eviction on how to obtain rental assistance or where to find alternate housing, and they have done so extensively in recent years without fear of prosecution. *See* JA 69–70 (Murphy Decl. ¶¶ 5–9). But South Carolina prohibits Plaintiffs from giving the same tenants advice about their basic legal rights. That restriction is content-based because it discriminates between speakers based on the message they convey. As the Supreme Court has explained, a statute "regulates speech on the basis of its content" when the law applies to "advice derived from 'specialized knowledge'" but exempts "general or unspecialized knowledge." *Humanitarian Law*, 561 U.S. at 27; *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 114 (S.D.N.Y. 2022) (applying *Humanitarian Law* to hold that New York's unauthorized-practice-of-law rules create content-based distinction because they cover "legal advice" but not "non-legal advice").

30

Although Defendant failed to present any merits argument in the district court (see below at p. 34), he may argue that South Carolina's restriction on the unauthorized practice of law primarily addresses conduct, not speech. But even laws that are "directed at conduct" can constitute content-based restrictions on speech when "as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message." *Humanitarian Law*, 561 U.S. at 28; *see also Cohen v. California*, 403 U.S. 15, 16–19 (1971) (overturning conviction for disturbing the peace, under law that generally regulated conduct, when specific prosecution was based solely on speech). Although South Carolina's unauthorized-practice-of-law regime may properly restrict the conduct of nonlawyers in many respects, the only conduct in which Plaintiffs plan to engage is pure speech, and it is the content of their speech that subjects them to possible prosecution under South Carolina law. As applied to Plaintiffs, South Carolina's prohibition on the unauthorized practice of law "imposes more than an incidental burden on protected expression." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

This Court's decision in *Billups v. City of Charleston*, 961 F.3d 673 (4th Cir. 2020), confirms that Plaintiffs' proposed legal advice is speech protected by the First Amendment. In that case, the Court considered a First Amendment challenge to Charleston's tour-guide licensing ordinance. The Court reached the "rather straightforward conclusion" that the challenged ordinance "undoubtedly burdens

protected speech, as it prohibits unlicensed tour guides from leading paid tours—in other words, speaking to visitors—on certain public sidewalks and streets." *Id.* at 683. The Court rejected the City's argument that the ordinance regulated only professional conduct, reasoning that leading a tour is "an activity which, by its very nature, depends upon speech or expressive conduct." *Id.* The same is true here. Plaintiffs want to tell tenants about their rights, an activity that by its very nature depends on speech.

This Court's prior decision in *Capital Associated Industries, Inc. v. Stein*, 922 F.3d 198 (4th Cir. 2019) ("*CAI*"), is not to the contrary. There, the Court rejected a challenge from a trade association to a North Carolina statute prohibiting corporations from selling commercial legal services. The Court determined that the challenged provision was a regulation of professional conduct that only incidentally burdened speech. *Id.* at 207. But the plaintiffs in that case wanted to engage in legal activities such as drafting documents and charging hourly fees that went beyond the pure speech involved in Plaintiffs' proposed Housing Advocate Program, and the Court explicitly distinguished the challenge there from one that focused solely on what "advice lawyers may give to clients." *Id.* at 208. Here, by contrast, Plaintiffs seek to engage in only "the communicative aspects of practicing law." *Id.* As applied to the Housing Advocate Program, South Carolina's

prohibition on the unauthorized practice of law is thus a content-based restriction on speech.

>    ii.    *Defendant failed to provide any justification for the State's content-based restriction on speech.*

Although the party seeking a preliminary injunction bears the burden of showing a likelihood of success on the merits, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). When a plaintiff challenges "a content-based speech restriction, the burden is on the Government" to justify the challenged law. *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004). Because "the Government bears the burden of proof on the ultimate question" of whether the challenged law complies with the First Amendment, a plaintiff "must be deemed likely to prevail unless the Government has shown" that the law is constitutional. *Id.* at 666; *see also Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020) ("In First Amendment cases the initial burden is flipped," and "[t]he government bears the burden of proving that the law is constitutional," such that "the plaintiff must be deemed likely to prevail if the government fails to show the constitutionality of the law." (internal quotation marks omitted)).

As discussed above, as applied to Plaintiffs' limited legal advice, South Carolina's prohibition on the unauthorized practice of law is a content-based

restriction of speech. Defendant thus bears the burden of demonstrating the constitutionality of the statute. But in the district court, he made no effort to defend the law on the merits. In responding to the motion for a preliminary injunction, Defendant declined to address Plaintiffs' likelihood of success on the merits, stating that it was "unnecessary" and "premature" to do so. JA 171 (Dkt. 35-3 at 18). And while Plaintiffs created an extensive evidentiary record, *see* JA 35–107 (setting forth the full training manual and both party and expert declarations), Defendant failed to submit any evidence at all to support the application of the State's unauthorized-practice-of-law regime to the Housing Advocate Program. Because "there was no evidence presented at the preliminary injunction stage" to support the application of the State's unauthorized-practice-of-law regime to the Program's free, limited, and accurate legal advice, Plaintiffs have "demonstrated a strong likelihood of success on the merits." *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 260 (4th Cir. 2003).

> iii.   *As applied to Plaintiffs, South Carolina's unauthorized-practice-of-law prohibition violates the First Amendment's Free Speech Clause*

Even setting aside Defendant's failure to provide any justification for the State's infringement on Plaintiffs' free-speech rights, Plaintiffs are likely to succeed on the merits of their claim. As a content-based restriction on Plaintiffs' speech, South Carolina's prohibition on the unauthorized practice of law triggers

strict scrutiny. *See Reed*, 576 U.S. at 163–164; *Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. at 2346 ("Content-based laws are subject to strict scrutiny."); *Upsolve*, 604 F. Supp. 3d at 117 (applying strict scrutiny in challenge to New York's unauthorized practice of law rules). Defendant may argue that the State's unauthorized-practice-of-law regime triggers less exacting scrutiny because the practice of law has traditionally been subject to professional licensing. But professional licensing schemes are not immune from heightened scrutiny under the First Amendment. The Supreme Court has rejected efforts to afford "professional speech" lesser protection, warning that states cannot "reduce a group's First Amendment rights by simply imposing a licensing requirement." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2375 (2018). A content-based restriction on speech is "presumptively unconstitutional," *id.* at 2371, no matter what it is called.

Regardless of whether strict or intermediate scrutiny applies, Defendant cannot satisfy his burden to justify silencing Plaintiffs. *See Billups*, 961 F.3d at 685 (declining to decide whether strict or intermediate scrutiny applied when government could not satisfy either standard). Strict scrutiny is "the most demanding test known to constitutional law." *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)). A speech restriction satisfies strict scrutiny only if it "furthers a compelling interest

35

and is narrowly tailored to achieve that interest." *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). Under intermediate scrutiny, the government must show that a speech restriction is "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (internal quotation marks omitted). That standard likewise "require[s] the government to present actual evidence supporting its assertion that a speech restriction does not burden substantially more speech than necessary." *Reynolds v. Middleton*, 779 F.3d 222, 229 (4th Cir. 2015).

Although the State may generally have an interest in regulating the practice of law, it has no significant or compelling interest in prohibiting the free, limited, and carefully vetted legal guidance that Plaintiffs wish to provide. The purpose of South Carolina's ban on the unauthorized practice of law is to "assure the public adequate protection in the pursuit of justice." *Matter of Anonymous Applicant for Admission to S.C. Bar*, 875 S.E.2d 618, 622 (S.C. 2022) (internal quotation marks omitted). That includes an interest in protecting the public from potentially harmful, inaccurate legal advice given by nonlawyers. *See Linder*, 560 S.E.2d at 617. Barring Plaintiffs from implementing their Housing Advocate Program does nothing to advance the State's interest in consumer protection. To the contrary, preventing Plaintiffs from advising tenants facing eviction about their rights would disserve that interest.

36

The purpose of the Housing Advocate Program is to expand tenants' access to free legal guidance and ultimately to the courts. Advocates will tell tenants how to request a hearing, when to request a hearing, and what common defenses they may be able to raise. That advice is simple enough to be competently dispensed by nonlawyers yet vitally important for allowing tenants to exercise their rights. An expert on housing law in South Carolina has vouched for the usefulness and accuracy of the Program's guidance. JA 97–99 (Fessler Decl. ¶¶ 7–13). Surely, the State has no interest in tenants defaulting on their eviction proceedings because they are unaware of their right to a hearing or what to say in their defense.

The South Carolina NAACP has also included several internal safeguards to ensure that the Program protects consumers. The Program is free to tenants. JA 36 (Training at 1). Advocates must check for conflicts of interest, must disclose that they are not lawyers, and must obtain the tenant's informed consent. JA 36–37 (Training at 1–2). Once they engage with a tenant, Advocates must protect the confidentiality of any information they receive. JA 37 (Training at 2). And Advocates must recommend that tenants contact a legal-services provider if they have problems beyond the scope of the Program's limited advice. JA 36–37, JA 51 (Training at 1–2, 16). An expert on legal ethics has attested that the Program would "provide benefits to tenants without implicating the sort of concerns that justify

restrictions on the practice of law by nonlawyers." JA 94 (Chambliss Decl. ¶ 62).
In short, banning the Program would hurt, not help, South Carolina consumers.

Nor is South Carolina's prohibition on the unauthorized practice of law
narrowly tailored to burden no more speech than necessary to achieve its ends. The
law is both overinclusive and underinclusive, a lethal combination in First
Amendment jurisprudence. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 805
(2011). The prohibition on unauthorized practice of law is overinclusive because it
functions as a blanket ban on speech by nonlawyers that communicates legal
information. *See Linder*, 560 S.E.2d at 622 (interpreting the prohibition on the
unauthorized practice of law as a blanket ban that reaches even alerting someone to
their rights under an insurance policy). That broad prohibition covers even free and
accurate legal advice from nonlawyers that the State has no interest in banning and
tenants desperately need. In light of the all-inclusive nature of that restriction, the
government has failed "to *prove* that it actually *tried* other methods to address the
problem." *Billups*, 961 F.3d at 687 (internal quotation marks omitted).

Alternative options are readily apparent. South Carolina may be able to
satisfy its interest in protecting consumers from fraud by nonlawyers with narrower
restrictions that, for instance, prohibit nonlawyers from charging money for legal
services or impose ethical requirements, such as full disclosure of a person's
qualifications, informed consent, and confidentiality. Plaintiffs' Program already

38

includes those guardrails, which provide adequate protection to the public. The success of nonlawyer legal-service initiatives in other states, particularly in the area of housing law, suggests that a more narrowly tailored approach is not only feasible but also likely more effective than South Carolina's current regime. *See* JA 28–29 (Compl. ¶¶ 70–73). For instance, the Delaware Supreme Court has authorized nonlawyer "Qualified Tenant Advocates" to represent tenants in eviction actions, "including but not limited to providing advice regarding defenses." Del. Sup. Ct. R. 57.1. Similarly, the Utah Supreme Court has authorized a program through which nonlawyers at community-based organizations provide "free limited legal advice related to housing." Utah Sup. Ct. Standing Order No. 16, at 2 (effective Mar. 9, 2023). Because the State has failed to even attempt those narrower alternatives—or explain why they would be inadequate to protect its interests—the unauthorized-practice-of-law regime is overinclusive.

The prohibition on unauthorized legal advice is also underinclusive because South Carolina law permits nonlawyers to do much more than give limited legal advice in some circumstances. For instance, nonlawyer law enforcement officers can prosecute certain cases in South Carolina courts. *See In re Unauthorized Prac. of L. Rules Proposed by S.C. Bar*, 422 S.E.2d at 123. Remarkably in the current context, the magistrates who review and adjudicate eviction actions in South Carolina are not required to be lawyers—and a majority of them are not. *See*

39

Christel Purvis, *Should I Stay or Should I Go? South Carolina's Nonlawyer Judges*, 73 S.C. L. Rev. 1145, 1146 (2022). It makes no sense to allow nonlawyers to decide whether a tenant loses his home, while banning nonlawyer advocates from giving basic legal advice to help that tenant keep her home.

"'The First Amendment directs [courts] to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good.'" *Sorrell*, 564 U.S. at 577 (quoting *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (opinion of Stevens, J.)). As applied to Plaintiffs' efforts to help demystify eviction proceedings, South Carolina's unauthorized-practice-of-law prohibition keeps people in the dark. It cannot satisfy either strict or intermediate scrutiny.

> **2.    As applied to Plaintiffs, South Carolina's unauthorized-practice-of-law regime violates the First Amendment Freedom to Associate.**

Plaintiffs are entitled to injunctive relief so long as they are likely to succeed on at least one of their claims. *Roe v. DOD*, 947 F.3d 207, 225 n.3 (4th Cir. 2020). But application of South Carolina's unauthorized-practice-of-law regime to the Housing Advocate Program violates Plaintiffs' freedom of association as well. The First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). Here, Plaintiffs seek to

associate to ensure access to the courts and to secure legal rights—the sort of activities that the Supreme Court has recognized are at the very core of the First Amendment right to associate.

In a long line of cases, the Supreme Court has held that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right." *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971); *see Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1 (1964); *NAACP v. Button*, 371 U.S. 415 (1963); *see also CAI*, 922 F.3d at 204–205. In *Button*, for instance, the Court considered a challenge by the NAACP to Virginia laws that prevented the organization from assisting Black communities in litigation to end school segregation.[4] 371 U.S. at 419–26. The Supreme Court sustained the NAACP's claim that the Virginia laws infringed the rights of the organization, its members, and its lawyers "to associate for the purpose of assisting persons who seek legal redress for infringements of their constitutionally guaranteed and other rights." *Id.* at 428. The Court reasoned that the NAACP's legal advocacy was "a means for achieving the lawful objectives of equality of treatment by all

---

[4] *Button* arose from the same litigation as *Harrison*. Following the abstention ruling at issue in *Harrison* and the ensuing state-court proceedings, the NAACP returned to federal court, leading to the Supreme Court's decision in *Button*. *Button*, 371 U.S. at 427.

41

government . . . for the members of the [Black] community in this country." *Id.* at 429.

When explaining that line of precedent, sometimes referred to as the "*Button* cases," this Court has looked to "public interest organizations like the NAACP" to illustrate the sort of collective action, directed at "securing constitutionally guaranteed civil rights," that the freedom of association protects. *CAI*, 922 F.3d at 204–205 (internal brackets omitted). By contrast, in *CAI*, this Court held that the First Amendment right to associate does not protect a trade association's efforts to provide legal services to employers. *Id.* at 206–207. The Court therefore rejected the trade association's challenge to North Carolina's unauthorized-practice-of-law restrictions. In reaching that result, the Court identified several factors that cut against recognition of a right to associate. First, the *Button* cases distinguish between "the commercial practice of law" and "associating for non-commercial purposes to advocate the enforcement of legal and constitutional rights." *Id.* at 205. The Court found no violation of the trade association's right to associate because the proposed activity served only "commercial ends and would address only private concerns." *Id*. at 206. The Court also considered whether the proposed activity would facilitate access to the courts and whether it would "pose ethical concerns not present in the *Button* cases," such as a "professionally reprehensible conflict[] of interest." *Id.* at 205–206. The trade association's proposed legal

42

services would not facilitate access to the courts, since its members were employers who already had ample access to legal services, and the trade association's structure posed special ethical concerns, given the potential for conflicts of interest. *Id.* at 206.

Here, all of those factors support recognizing Plaintiffs' right to associate. The Housing Advocate Program will serve no commercial interests. Plaintiffs' legal advice will always be free, and Housing Advocates will be volunteers who receive no payment for their work. JA 71 (Murphy Decl. ¶ 15); JA 36 (Training at 1). The purpose of the Housing Advocate Program is to facilitate access to the courts for tenants facing eviction. Unless tenants know to request a hearing within the short 10-day window provided under South Carolina law, *see* S.C. Code Ann. § 27-37-20, they default on their eviction cases without any opportunity to be heard. Explaining the eviction process to tenants will allow them to access the courts and thereby afford them an opportunity to assert their rights. The Program also includes safeguards to ensure that it poses no ethical concerns. As discussed above, before they provide advice to a tenant, Housing Advocates must disclose that they are not attorneys, check for conflicts of interest, and obtain informed consent. JA 37 (Training at 2). And the advice provided is circumscribed to ensure that it is clear, accurate, and helpful. The Program is the sort of association "to help one another to preserve and enforce rights" that "cannot be condemned as a threat

43

to legal ethics." *Trainmen*, 377 U.S. at 7. In short, Plaintiffs' Program is a "collective activity undertaken to obtain meaningful access to the courts," that the Supreme Court and this Court have recognized as a "fundamental right." *CAI*, 922 F.3d at 205 (quoting *United Transp. Union*, 401 U.S. at 585). Plaintiffs' proposed legal advice is thus protected by the First Amendment right to associate.

Defendant may argue that the right to associate for purposes of ensuring access to the courts recognized in *Button* applies to only lawyers. But the First Amendment bestows rights upon "the people," *see* U.S. Const. amend. I, and it is untenable to suggest that lawyers have any special First Amendment rights not shared by other members of society. Although the *Button* cases involved lawyers, the Supreme Court cabined neither its judgment nor its reasoning to members of that profession. In *Button*, for instance, the Court referred to the associational rights of "the NAACP and its members and lawyers." 371 U.S. at 428. And in extending the holding of *Button* to labor unions, the Supreme Court described *Button* and its progeny as "upholding the First Amendment principle that groups," including a union's "members, officers, agents, or attorneys," "can unite to assert their legal rights." *United Transp. Union*, 401 U.S. at 580. Lawyers were in the mix, but in each case, the Court recognized the rights of others to engage in collective activity to promote access to courts.

44

Restrictions on the First Amendment right to associate are subject to "exacting scrutiny." *In re Primus*, 436 U.S. at 432. To satisfy that burden, the government must show "a compelling state interest," *Button*, 371 U.S. at 438, and must demonstrate "that the means employed in furtherance of that interest are closely drawn to avoid unnecessary abridgment of associational freedoms," *In re Primus*, 436 U.S. at 432 (internal quotation marks omitted).

As applied to Plaintiffs' free, limited, and accurate legal advice, South Carolina's prohibition on the unauthorized practice of law fails that test. The State lacks any compelling interest that justifies prohibiting Plaintiffs' associational activity. As explained above in the context of Plaintiffs' free-speech claim, the purpose of South Carolina's restrictions on legal practice is to "assure the public adequate protection in the pursuit of justice." *Matter of Anonymous Applicant for Admission to S.C. Bar*, 875 S.E.2d at 622. That same objective motivates Plaintiffs to help tenants access the courts and thus avoid unnecessarily forfeiting their rights. The Housing Advocate Program would thus advance, rather than undermine, South Carolina's "paramount concern" for protecting the public. *See Buyers Serv. Co.*, 357 S.E.2d at 19.

Nor is the State's prohibition "closely drawn to avoid unnecessary abridgement of associational freedoms." *In re Primus*, 436 U.S. at 432. As *Button* explained, "[p]recision of regulation must be the touchstone in an area so closely

45

touching our most precious freedoms." 371 U.S. at 438. South Carolina's ban on the unauthorized practice of law exhibits no such precision. Instead, it is a blunt instrument, creating a sweeping prohibition on any activity that touches on the law. JA 89 (Chambliss Decl. ¶¶ 46–47); *Doe*, 532 S.E.2d at 882. The prohibition smothers Plaintiffs' ability to associate to ensure access to courts, leaving no "breathing space" for "First Amendment freedoms" to "survive." *Button*, 371 U.S. at 433. South Carolina's unauthorized-practice-of-law regime thus fails exacting scrutiny, as applied to Plaintiffs' proposed activities.

### B. Plaintiffs are likely to suffer—and are already suffering— irreparable injury.

Plaintiffs are suffering an ongoing irreparable injury because the credible threat that they will be criminally prosecuted for engaging in the unauthorized practice of law is chilling them from exercising their First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67 (quoting *Elrod*, 427 U.S. at 373). This Court has accordingly explained that in a First Amendment case, the irreparable-harm prong is "inseparably linked" to the plaintiff's claim "of a violation of his First Amendment rights." *Newsom*, 354 F.3d at 254. When "there is a likely constitutional violation, the irreparable harm factor is satisfied." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't.*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc).

46

Plaintiffs are eager and ready to tell tenants facing eviction about their legal rights. But the threat of prosecution prevents them from speaking. The loss of Plaintiffs' First Amendment rights to expression and association, even on a temporary basis, is a paradigmatic irreparable injury. Speech later is no substitute for speech now. That is true not only for Plaintiffs but also for the communities they seek to serve. Without the advice they need to access the courts and exercise their rights, the vast majority of tenants default on their eviction cases and lose their homes. And the devastating consequences that follow those evictions, both for individual tenants and their entire communities, cannot be undone. In the absence of a preliminary injunction, both Plaintiffs and the tenants who could benefit from the Housing Advocate Program will suffer irreparable harm. And without interim relief, that irreparable harm will persist throughout the pendency of Plaintiffs' litigation in both the South Carolina Supreme Court and federal court.[5]

### C.   The balance of the equities and public interest favor Plaintiffs.

The balance of the equities and public interest favor Plaintiffs because their proposed Housing Advocate Program would serve the public good and because the State lacks any legitimate interest in enforcing an unconstitutional restriction on First Amendment rights. When the government is the party opposing injunctive

---

[5] For the same reasons, Plaintiffs have standing, as the district court correctly held. JA 229–230 (Dkt. 64 at 9-10).

relief, the balance of the equities and public interest prongs of the preliminary injunction test "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Roe*, 947 F.3d at 230. A court assessing these factors "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

This Court "deem[s] those factors established when there is a likely First Amendment violation," like the ones described above. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013) (internal quotation marks omitted). Circuit precedent counsels that "a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional" and that "upholding constitutional rights surely serves the public interest." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (internal quotation marks omitted). Here, protecting Plaintiffs' rights to freedom of expression and association would serve the public interest, while imposing no harm to the State. In the district court, the only harm to its interests that the State identified was that Plaintiffs chose to pursue their federal rights in federal court rather than "following a process that [the State] ha[s] set up here by which they can have their program authorized." JA 210–211 (Trans. at 28–29). The State conceded that the preliminary injunction would cause no harm to any other state interest. JA 210–211 (Trans. at 28–29).

48

What's more, the purpose of Plaintiffs' Housing Advocate Program is to serve the public interest. South Carolina has one of the highest eviction rates in the country, JA 79 (Chambliss Decl. ¶ 14); JA 15–16 (Compl. ¶ 20), and nearly every tenant facing eviction in South Carolina does so without the assistance of counsel, JA 78 (Chambliss Decl. ¶ 11). Plaintiffs' free, limited, and accurate legal advice would empower many of those tenants to assert their legal rights, and the many safeguards included in the Program will prevent harm to consumers or the State. Every day that goes by before Plaintiffs can implement their Program leads to more unnecessary evictions, which disrupt people's lives and tear apart communities. JA 75 (Winchester Decl. ¶ 15). The balance of equities and public interest strongly favor Plaintiffs.

## CONCLUSION

For the foregoing reasons, the district court's denial of Plaintiffs' motion for a preliminary injunction should be reversed, and the Court should direct the district court to enter a preliminary injunction.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs respectfully request that the Court hear oral argument. This case involves what appears to be a novel question in the Fourth Circuit: whether *Pullman* abstention moots a motion for a preliminary injunction. And Plaintiffs seek an extraordinary remedy: an injunction barring enforcement of a state law. In

49

light of the significance of those issues, Plaintiffs believe the Court would benefit

from oral argument.

                                        Respectfully submitted,

JAMES E. COX, JR.                       /S/ William Powell
    200 E. Broad St., Suite 400         AMY MARSHAK
    Greenville, SC 29602-0728           JOSEPH W. MEAD
    864-242-8212                        WILLIAM POWELL
    E-Mail: jcox@wyche.com                  INSTITUTE FOR CONSTITUTIONAL
                                                ADVOCACY AND PROTECTION
GLYNNIS HAGINS                              GEORGETOWN UNIVERSITY LAW
JOE SCHOTTENFELD                                CENTER
    NAACP                                   600 New Jersey Ave., N.W.
    4805 Mt. Hope Drive                     Washington, D.C. 20001
    Baltimore, MD 21215                     (202) 661-6629
    (410) 580-5777                          amy.marshak@georgetown.edu
    ghagins@naacpnet.org                    jm3468@georgetown.edu
    jschottenfeld@naacpnet.org              william.powell@georgetown.edu

                                        BEN GIFFORD
                                            INSTITUTE FOR CONSTITUTIONAL
                                                ADVOCACY AND PROTECTION
                                            GEORGETOWN UNIVERSITY LAW
                                                CENTER
                                            PO Box 211178
                                            Brooklyn, NY 11221
                                            (202) 661-6728
                                            bg720@georgetown.edu

*November 6, 2023*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a). This brief contains 11,691 words, excluding the parts of the document exempted by Rule 32(f), and was prepared in fourteen-point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

*/s/ William Powell*
WILLIAM POWELL
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, I electronically filed the
foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the
Fourth Circuit by using the appellate CM/ECF system.  Participants in the case are
registered CM/ECF users, and service will be accomplished by the appellate
CM/ECF system.

*/s/ William Powell*
WILLIAM POWELL
*Counsel for Plaintiffs-Appellants*